UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X
KAROL BARNES,

Plaintiff,

-against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY POLICE DEPARTMENT, SUFFOLK COUNTY SHERIFF'S DEPARTMENT, FRANK GARAFANO, TED CAPUTO, PHILIP DLUGINSKI, JANE DOE #1-3* and JOHN DOE #1-3*,

Defendants.

(**Said name being fictitious and meant to include the other members of the Suffolk County Police Department and Suffolk County Sheriff's Department.*)
---------------------------------X

MEMORANDUM & ORDER
19-CV-1677 (JS) (AYS)

APPEARANCES
For Plaintiff: Jerome Noll, Esq.
Marzec Law Firm, P.C.
57 West 57th Street, Suite 809
New York, New York 10019

For Defendants: Anne C. Leahey, Esq.
Suffolk County Department of Law
100 Veterans Memorial Highway
P.O. Box 6100
Hauppauge, New York 11787

SEYBERT, District Judge:

Presently before the Court is a motion for summary judgment ("Motion") filed by County of Suffolk ("Suffolk County"), Frank Garafano, Ted Caputo, and Philip Dluginski (collectively, "Defendants") seeking the dismissal of the Amended Complaint filed

by Karol Barnes ("Plaintiff"). (See Motion, ECF No. 78; see also Am. Compl., ECF No. 9.) Plaintiff alleges Defendants responded to a landlord-tenant dispute at Plaintiff's home that resulted in her unlawful arrest in violation of New York state law, 42 U.S.C. §§ 1983 ("Section 1983") and 1985 ("Section 1985"), her constitutional rights to due process and equal protection, as well as her constitutional protections against unlawful takings, malicious prosecution, and false arrest and imprisonment. (See generally Am. Compl.) Defendants move for summary judgment, contending there is no dispute of material fact challenging the constitutionality or lawfulness of Plaintiff's arrest and subsequent prosecution. (See generally Motion.) For the reasons explained herein, Defendants' Motion is GRANTED in its entirety.

## BACKGROUND

### I. Factual Background

The Court draws all facts from the pleadings[1] and materials submitted by Plaintiff and Defendants (together, the "Parties") consistent with Local Civil Rule 56.1. (See Pl.'s 56.1 Response, ECF No. 78-15, attached to Opp'n; Defs.' 56.1 Statement, ECF No. 78-3, attached to Motion.) If supported by record evidence, the facts articulated by the Parties are accepted as

[1] To the extent the Court relies upon the pleadings in stating facts herein, said pleadings are admitted or deemed admitted, except where explicitly denied in Defendants' answer. See FED. R. CIV. P. 8(b)(1)(B) & (6).

true. See Gould v. ILKB, LLC, No. 20-CV-5154, 2024 WL 4309219, at *2 (E.D.N.Y. Sept. 26, 2024); see also Giannullo v. City of N.Y., 322 F.3d 139, 143 n.5 (2d Cir. 2003) (failure to verify assertions in a summary judgment motion with the record "would derogate the truth-finding functions of the judicial process by substituting convenience for facts"). Unless otherwise noted, the following facts are undisputed.

A. The Parties

At all times relevant to this Motion ("Relevant Period"), Plaintiff was a resident of Suffolk County, New York, and employed by the Village of Hempstead as a police officer.[2] (See Am. Compl. ¶¶ 5, 23-24.) Plaintiff owns a three-bedroom, ranch-style home located at 32 Peach Place, Bay Shore, New York ("Property"). (See Pl.'s Tr. at 10:23-11:4, 30:22-25.) On or around January 1, 2017, Plaintiff began renting the basement apartment of the Property to her cousin, Shiverne Taliefero ("Taliefero"), and Taliefero's three children. (See Pl.'s 56.1 Resp. ¶¶ 1-2, 4.)

Suffolk County is a domestic municipal corporation, organized and existing under the laws of the State of New York. (See Am. Compl. ¶ 6.) The Suffolk County Police Department

[2] Plaintiff subsequently retired from her employment as a police officer in or around January 2019. (See Pl.'s Tr., Ex. A, ECF No. 78-4, at 16:14-21, attached to Motion.)

("SCPD") is a municipal police department located and operating within Suffolk County. (See id. ¶ 7.) Throughout the Relevant Period, Frank Garafano ("Officer Garafano"), Philip Dluginski ("Sergeant Dluginski"), and Ted Caputo ("Sergeant Caputo") (collectively, "Defendant Officers") were employed by the SCPD as Suffolk County police officers. (See id. ¶¶ 9-11.)

B. Plaintiff's Dispute with Her Cousin

In November 2017, Plaintiff told Taliefero to move out of Plaintiff's basement, and Taliefero agreed. (See Pl.'s 56.1 Resp. ¶ 6.) Taliefero subsequently took some of her belongings and left the Property on December 29, 2017. (See id. ¶ 7.) Taliefero left behind several personal items at the Property, including her bed, clothing, household items, and toiletries. (See id. ¶ 8.) After Taliefero's departure on December 29, 2017, Plaintiff and her son placed Taliefero's remaining belongings in garbage bags, although Taliefero never asked them to do so. (See id. ¶¶ 9-10.) Plaintiff also locked both gates to the Property's backyard. (See id. ¶ 12.) Once Plaintiff locked the gates, Taliefero could no longer readily access the Property's backyard or basement apartment. (See id. ¶ 13.)

Between December 29, 2017, and the morning of January 1, 2018, Plaintiff was absent from the Property and stayed at a hotel in a nearby town. (See id. ¶ 14; Pl.'s Tr. at 85:11-86:15.) Although Plaintiff was not home during this period, she remotely

monitored the Property's exterior via a surveillance camera. (See Pl.'s 56.1 Resp. ¶¶ 14-15.) Thus, via surveillance video, Plaintiff observed Taliefero returning to the Property several times during this period to retrieve her belongings. (See id. ¶¶ 14-16.)

On December 30, 2017, Taliefero text messaged Plaintiff to inform her that Taliefero planned to remove the rest of her belongings from the Property on December 31, 2017, with the help of a moving truck. (See id. ¶ 17.) Thus, Taliefero asked Plaintiff to unlock the Property's gates so Taliefero could access the basement apartment. (See id.) Plaintiff replied that her son would unlock the gates on December 31, 2017. (See id. ¶ 18.) But, on December 31, 2017, the moving truck did not arrive at the Property; so, Plaintiff's son did not unlock the gates. (See id. ¶¶ 19-20).

Taliefero then called Plaintiff and informed her the gates were locked. (See id. ¶¶ 20-22.) In response, Plaintiff asked Taliefero if she could return with the moving truck to avoid Taliefero "coming back, getting little pieces here and there." (Id. ¶¶ 22—23.) This prompted a disagreement between the cousins. (See id. ¶ 21.) The next day, on January 1, 2018, Officer Garafano received a radio call at around 8:00 a.m. instructing him to respond to a landlord-tenant dispute at the Property. (See id. ¶ 24.)

C. Officers Arrive at the Property

Upon his arrival, Officer Garafano spoke to Taliefero, who was waiting in her car outside the Property. (See id. ¶¶ 24, 27.) Taliefero allegedly informed Officer Garafano she lived at the Property but was temporarily staying elsewhere because Plaintiff turned off the apartment's heat. (See Defs.' 56.1 Stmt. ¶¶ 28-29.) Taliefero explained she returned to the Property to retrieve her belongings, including her clothes and her children's school supplies, and she learned her belongings were placed in garbage bags in the backyard behind the locked gates. (See Pl.'s 56.1 Resp. ¶¶ 29-31.) In the backyard, there were about 20 garbage bags containing Taliefero's belongings and additional large objects of hers were in the garage. (See id. ¶¶ 32-33.)

After speaking with Taliefero, Officer Garafano knocked on Plaintiff's door. (See id. ¶¶ 34-35.) When Plaintiff opened the door, Officer Garafano told Plaintiff that Taliefero called the police because Taliefero wanted her belongings and needed to pick up certain items that day, but the gates to the backyard and basement apartment were locked. (See id. ¶ 36.) Defendants allege Plaintiff asked Officer Garafano what Taliefero needed from the Property, and Plaintiff offered to search Taliefero's belongings to "get what [Taliefero] needs." (Defs.' 56.1 Stmt. ¶ 37.) Plaintiff disputes this and counters that Defendants fabricated these statements. (See Pl.'s 56.1 Resp. ¶ 37.) Plaintiff also

maintains she agreed to allow Taliefero to retrieve her belongings. (See id.) Officer Garafano then allegedly told Plaintiff she needed "to provide [Taliefero] her stuff." (Id. ¶ 38.)

Sometime after Officer Garafano and Plaintiff's initial introduction, Plaintiff identified herself as a police officer, and Officer Garafano contacted Sergeant Dluginski to inform him Officer Garafano was at the Property responding to a "landlord-tenant dispute" involving an "active police officer." (Id. ¶¶ 40-42.) Upon learning Plaintiff was a police officer, Sergeant Dluginski reported to the Property to supervise the incident, arriving at around 9:00 a.m. (See id. ¶¶ 43-44.)

Sergeant Dluginski then spoke to Taliefero; during their conversation, Taliefero claimed she left the Property because Plaintiff turned off the heat and electricity, but Taliefero returned to retrieve the rest of her belongings. (See id. ¶¶ 45-46.) Sergeant Dluginski does not recall examining the Property's heat or electric meters. (See Dluginski Tr., Ex. C, ECF No. 78-6, at 125:12-126:18, attached to Motion.) Officer Garafano also did not ask Plaintiff if she turned off the heat or electricity in Taliefero's basement apartment. (See Garafano Tr., Ex. B, ECF No. 78-5, at 143:11-144:1-2, attached to Motion.) Plaintiff contends the Property "always had functioning heat," and Plaintiff informed the officers Taliefero moved out following the cousins' mutual agreement. (Id. ¶¶ 39, 45; see also Pl.'s Tr. at

91:07-10, 104:24-105:12.) Plaintiff further contends Taliefero "was given access to all her property within approximately 20 to 30 minutes" of Officer Garafano's initial arrival. (Pl.'s 56.1 Resp. ¶¶ 39, 45; see also Pl.'s Tr. at 91:07-10.) Defendants maintain that throughout this incident, Plaintiff refused to allow Taliefero access to the Property to retrieve her belongings. (See Defs.' 56.1 Stmt. ¶¶ 37-39, 49, 54.)

Plaintiff suggests any perceived delay in or hinderance to Taliefero retrieving her belongings from the Property stemmed from Plaintiff's inability to open the frozen locks on the gates, despite her efforts. (See Pl.'s 56.1 Resp. ¶ 38; Pl.'s Tr. at 91:11-14.) Because Plaintiff either could not, or would not, open the gates to allow Taliefero entry into the backyard, Plaintiff threw several bags containing Taliefero's belongings over the gate before officers directed Plaintiff to stop.[3] (See Pl.'s 56.1 Resp. ¶¶ 55-57.) Eventually, Plaintiff managed to unlock the gates. (See id. ¶ 51.)

While not disputed that the officers were given access to the backyard and entered it, it is disputed whether Plaintiff also granted Taliefero the same access. (See id. ¶¶ 49, 52, 54;

---

[3] Whether Plaintiff began throwing the bags over the gate before or after she unlocked it is disputed, as are Plaintiff's motives for doing so. Plaintiff contends she threw the bags because the gate would not unlock; however, Plaintiff does not cite the record to support that claim. (See Pl.'s 56.1 Resp. ¶¶ 55-57.)

Pl.'s Tr. at 92:2-4.) Still, Plaintiff maintains Taliefero's "access [to the Property] had been obtained" by virtue of the officers' presence, and Plaintiff allegedly told Taliefero she could "have [her] stuff." (Pl.'s 56.1 Resp. ¶¶ 49, 53 ("The claim that access was denied is inconsistent with the fact that police entry was achieved."); id. ¶ 54 ("As law enforcement had access, [Taliefero] [] likewise had access."); see also Pl.'s Tr. at 91:2-25, 93:18-94:9.) Plaintiff also maintains she did not deny Taliefero access to the backyard or garage at any point. (See id. at 93:10-17.)

The parties dispute whether Defendants warned Plaintiff she could be arrested if she did not permit Taliefero to access her belongings. (See Pl.'s 56.1 Resp. ¶ 58; see also Pl.'s Tr. at 106:23-107:8.) Plaintiff further alleges any statements attributed to her suggesting she hindered Taliefero's retrieval of her belongings stemmed from inaccurate and untrue statements made by the officers to Taliefero. (See Pl.'s 56.1 Resp. ¶ 60.) According to Plaintiff, the only reason Taliefero believed she was missing certain items or could not enter the Property, which led to her pressing charges against Plaintiff, was because the officers inaccurately told Taliefero that was the case. (See id. ¶¶ 60, 66.) However, Plaintiff's record citations do not support her claim the officers lied to Taliefero. (See id.)

Taliefero then told the officers she had items too large to fit in garbage bags, and thus, needed to access the basement to retrieve those items. (See id. ¶¶ 61-62.) Sergeant Dluginski asked Plaintiff about Taliefero's furniture; Plaintiff responded that she had moved it into the garage. (See id. ¶ 63.) Plaintiff opened the garage, pointed at the items, and went back inside her house. (See id. ¶¶ 64-65.) Taliefero then walked up to the garage, "look[ed]" at her belongings, and told the officers she was still missing items. (Id. ¶¶ 65-66.) According to Defendants, when the officers asked Plaintiff about the missing items, Plaintiff stated she moved the items to a storage unit but refused to give its name or location. (See Defs.' 56.1 Stmt. ¶¶ 67-68.) In dispute, Plaintiff counters "no one asked" her about any additional items apart from those in placed in the bags and garage. (See Pl.'s 56.1 Resp. ¶ 67.) Plaintiff further disputes putting any of Taliefero's belongings in storage, asserting she did not "have" a storage unit at all. (Pl.'s Tr. at 92:09-14.) However, in front of an officer, Plaintiff did inform Taliefero that if Taliefero failed to remove her belongings from the Property, Plaintiff would place them in storage. (See id. at 92:12-24.) Plaintiff contends the officers misled Taliefero to believe she was missing additional items that Plaintiff was withholding in a storage unit, basing this contention upon a clarifying question

the officer asked Plaintiff regarding the placement of items in storage. (See Pl.'s 56.1 Resp. ¶ 66; Pl.'s Tr. at 93:3-9.)

Defendants further contend, and Plaintiff disputes, that when police officer Liz Yasso ("Officer Yasso") arrived at the scene, Officer Garafano and Sergeant Dluginski told Officer Yasso they would have to give Plaintiff a final warning or she would be arrested. (Compare Defs.' 56.1 Stmt. ¶¶ 70-71; Garafano Tr. at 108:16-23, with Pl.'s 56.1 Resp. ¶ 71.) Officer Garafano and Sergeant Dluginski then discussed placing Plaintiff under arrest. (See Defs.' 56.1 Stmt. ¶ 72.) Before arresting Plaintiff, Taliefero told Officer Garafano, "I want to press charges because I need my stuff back." (Id. ¶ 74.) Defendants contend Officer Garafano proceeded to give Plaintiff a final warning, informing her Taliefero wanted to press charges if she did not recover her belongings. (See id. ¶ 75.) Plaintiff replied, "Well, then arrest me." (See id. ¶¶ 75-76; Pl.'s 56.1 Resp. ¶¶ 74-76.)

Before arresting Plaintiff, Officer Garafano completed a "domestic incident report" ("DIR"), wherein Taliefero signed a sworn statement supporting charges against Plaintiff for petit larceny and willful eviction. (See Defs.' 56.1 Stmt. ¶¶ 81-89.) In the subject DIR, Taliefero swore, under penalty:

> My cousin, who is also my Landlord, Karol Barnes . . . turned off the electric in my apartment several days ago. . . . I came over to my apartment [] and found that she put locks on the backyard gates to prevent me from

> entering the apartment. I came back today to find that my cousin put some of my belongings . . . in the backyard[,] . . . in her locked garage[, and] at a commercial storage facility. I did not authorize her to do any of this. I went thru [sic] some of my belongings that I obtained access to and cannot find my children['']s bookbags, clothes, electronics and jewelry. [Plaintiff] refuses to grant me access to my stuff and for that I want to pursue criminal charges against her for larceny. . . . [I]n addition to shutting the electric, she also turned off the heat.

(DIR, Ex. E, ECF No. 78-8, at 2, <u>attached to</u> Motion); <u>see also</u> Defs.' 56.1 Stmt. ¶ 86.) Officer Garafano also signed the DIR. (<u>See</u> DIR at 1.) Taliefero further signed a criminal possession of stolen property affidavit ("CPSP Affidavit") that stated: "On or about 1/1/2018, I was the owner of or had a possessory right in certain property, namely personal belongings (misc.) in my [] apartment at [the Property] including book bags, clothing, [and] jewelry." (CPSP Affidavit, Ex. F, ECF No. 78-9, <u>attached to</u> Motion; <u>see also</u> Defs.' 56.1 Stmt. ¶ 89.) Apparently, in dispute, Plaintiff maintains Taliefero's sworn statements were based upon the officers' false statements about certain belongings being withheld at a storage facility. (<u>See</u> Pl.'s 56.1 Resp. ¶¶ 81, 84, 86, 89.)

In sum, the Parties dispute certain details regarding: Taliefero's departure from the Property on December 29, 2017; which of Taliefero's belongings remained at the Property; Plaintiff's willingness to allow Taliefero to inspect and retrieve her

belongings; and, whether Taliefero could actually access her belongings, with or without Plaintiff's express consent. (See id. ¶¶ 37-39.) Continuing, in relevant part, the officers relied upon the following to arrest Plaintiff: (1) Taliefero having expressed a desire to press charges against Plaintiff (see id. ¶¶ 74-75, 86); (2) Taliefero having asserted Plaintiff turned off Taliefero's heat and electricity, prompting her to leave the basement apartment (see id. ¶¶ 72-73, 82, 86; see also DIR at 2); (3) Taliefero having stated she was still missing some of her belongings (see Pl.'s 56.1 Resp. ¶¶ 66-69); and (4) Plaintiff and Taliefero being cousins, causing the dispute to be classified as a domestic incident, thereby requiring an arrest (see id. ¶¶ 77-80); see also Suffolk County Police Dep't Rules and Procs., ch. 16, §§ 6(d)(VI)(A)(2)(d)-(e) (2009).

D. Defendants Arrest Plaintiff and Transport Her to a Local Precinct

About three hours after Officer Garafano first reported to the Property, the officers instructed Plaintiff to get in the patrol car and return with them to the precinct. (See Pl.'s 56.1 Resp. ¶¶ 90, 95.) Defendants contend they placed Plaintiff under arrest, which Plaintiff disputes; according to her, she was not aware she was under arrest, having been told they were just going to the precinct to speak to a lieutenant. (See id. ¶ 90.) Officer Yasso then patted Plaintiff down and told her, "[A]ll your cousin

. . . wants is her backpacks." (Id. ¶ 93.) Plaintiff replied the backpacks were in "one of those bags in the backyard," and was then placed in the front seat of Officer Garafano's police vehicle, unrestrained. (Id. ¶¶ 93-95.) Officer Garafano told Plaintiff, "You're a police officer. I'm not going to handcuff you." (Id. ¶ 95.)

Upon Plaintiff's arrival at the Third Precinct, Sergeant Caputo interviewed her. (See id. ¶¶ 97-99.) Thereafter, Plaintiff was handcuffed and escorted to the squad room for Officer Garafano to process her arrest. (See id. ¶ 100.) At the Precinct, Plaintiff met with her supervising lieutenant and her union representative from the Hempstead Police Department. (See id. ¶ 103.) Officer Garafano waited outside the room while Plaintiff spoke with them. (See id. ¶ 104.)

E. Plaintiff Experiences a Medical Episode and Is Later Transported to a Different Precinct

Upon the conclusion of Plaintiff's conversation with her supervising lieutenant and union representative, Officer Garafano brought Plaintiff back into the squad room, where Plaintiff refused to be fingerprinted and photographed. (See id. ¶¶ 105-06.) Plaintiff then began to feel unwell, although the Parties' description of what ensued differs. (See id. ¶ 107.) Defendants contend Plaintiff began screaming about having difficulty breathing and chest pains, while Plaintiff claims she had a rapid

heartbeat and rested her head on the table. (See id.) Officer Garafano informed Sergeant Caputo, who then tried to assess Plaintiff's medical condition, but Plaintiff refused. (See id. ¶¶ 108-09.) Plaintiff was transported to the hospital, but not before Sergeant Caputo placed leg restraints on Plaintiff. (See id. ¶¶ 108, 111.)

Officer Garafano transferred custody of Plaintiff to two other officers; he then stayed at the Third Precinct to complete paperwork before going off duty. (See id. ¶¶ 114-16.) Plaintiff remained at the hospital for approximately an hour before being transported to the Fourth Precinct. (See id. ¶ 117.) Later that day, after Plaintiff was out of Officer Garafano's custody, Sergeant Dluginski received another 911 call from Taliefero, who stated she still could not retrieve her belongings from the Property. (See id. ¶ 125.) Defendants contend the gates were locked when Sergeant Dluginski returned to the Property, which Plaintiff disputes. (See id. ¶ 126.) Soon after Sergeant Dluginski returned to the Property, Plaintiff's son opened a gate,[4] and Taliefero gained access to her belongings in the backyard and garage, although she did not access the basement apartment. (See

[4] Plaintiff contends the gates and garage were left unlocked before her arrest, and thus, did not need to be unlocked for Taliefero to access her belongings. (See id. ¶ 129.)

id. ¶¶ 129-30.) Later that day on January 1, 2018, a moving truck arrived for Taliefero's belongings. (See id. ¶ 130.)

F. After Her Arrest, Plaintiff Seeks Medical Treatment and the Charges Against Her Are Dismissed

Plaintiff was held overnight at the Fourth Precinct; she contends the air conditioning was on all night, despite her repeated requests that it be turned off. (See id. ¶ 118.) In the morning, she was transported to criminal court, arraigned, pleaded not guilty, and was released on her own recognizance. (See id. ¶¶ 119-20.) Following her arrest, Plaintiff was absent from work for a "couple of days," but was not involuntarily suspended or otherwise disciplined. (See Pl.'s Tr. at 141:2-5, 142:24-143:9, 145:21-146:3.) About a month after her arrest, Plaintiff returned to the hospital for aches, pains, and swelling in her wrist, which was treated with Motrin. (See id. at 137:2-138:7.) Plaintiff does not recall injuring her wrist during her overnight detention at the Fourth Precinct, but believed the pain stemmed from the extreme cold to which she was subjected. (See id. at 137:3-138:25.)

After Plaintiff's arrest, Defendant Officers had no further interaction with Plaintiff regarding the January 1, 2018, incident. (See Pl.'s 56.1 Resp. ¶¶ 131-36, 138-40.) Neither Sergeant Dluginski nor Sergeant Caputo investigated the incident further or spoke with the district attorney about the matter, apart

from Sergeant Dluginski delivering to the precinct photos he took at the Property. (See id. ¶¶ 131-36.) Defendants contend Sergeant Caputo never spoke with other officers or members of the SCPD about the incident, but Plaintiff disputes this. (See id. ¶ 137.) Without supporting citation to the record, Plaintiff contends "[p]olice officers" spoke about the incident and Plaintiff's arrest, "drew up paperwork" containing false statements and information to support the petit larceny charge against Plaintiff, and forwarded that paperwork to prosecutors. (Id.)

Ultimately, after a few months, the charges against Plaintiff were dismissed. (See id. ¶ 122.) As a result of her arrest, Plaintiff claims she suffered significant, sustained emotional and physical distress. (See id. ¶¶ 118-19.)

## II. Relevant Procedural Background

### A. Commencement of the Action

Plaintiff commenced this action against Defendants on March 25, 2019. (See generally Compl.) On March 29, 2019, Plaintiff filed the operative Amended Complaint. (See generally Am. Compl.) The Amended Complaint generally alleged Plaintiff's arrest for petit larceny and willful eviction violated her Constitutional rights to due process and equal protection, as well as her rights against unconstitutional takings, malicious prosecution, false arrest and imprisonment, and conspiracy, as guaranteed by Sections 1983 and 1985. (See id. ¶¶ 8-16.)

Plaintiff also alleged several tort claims under New York state law. (See id. ¶¶ 9-16.)

B. Defendants' Motion and Plaintiff's Opposition

On April 10, 2026, Defendants filed the fully briefed Motion. (See generally Motion, ECF No. 78.) In relevant part, Defendants argue, inter alia, Plaintiff's false arrest and false imprisonment claims should be dismissed because there was probable cause to arrest Plaintiff for both petit larceny and willful eviction. (See Support Memo, ECF No. 78-1, at 14, 24.) Alternatively, Defendants argue they are entitled to qualified immunity because it was "objectively reasonable" for the officers to believe probable cause existed for Plaintiff's arrest based upon Taliefero's statements and their own observations at the Property. (Id. at 18.) Defendants also contend Plaintiff's malicious prosecution claim should be dismissed because "the individual defendants had no involvement with" Plaintiff's prosecution, and the officers are not subject to individual liability. (Id. at 21.)

In opposition, Plaintiff maintains there is a dispute of material fact regarding the false arrest and false imprisonment claims, malicious prosecution claims, and Defendants' qualified immunity defense. (See generally Opp'n, ECF No. 78-14.) Plaintiff's opposition largely centers on the contention Defendants had no probable cause to arrest and prosecute Plaintiff.

(See id. at 16-21, 23-24.) However, Plaintiff does not meaningfully contest Defendants' arguments supporting dismissal of the Amended Complaint's substantive due process, procedural due process, equal protection, unconstitutional takings, conspiracy, and negligence claims. (See generally id.)

DISCUSSION

I. Legal Standard for Summary Judgment Motions Under Rule 56(a)

The Court shall grant summary judgment under Rule 56(a) when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material for the purposes of resolving a summary judgment motion "when it might affect the outcome of the suit under the governing law." Adamson v. Miller, 808 F. App'x 14, 16 (2d Cir. 2020). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. (quoting Jeffreys v. City of N.Y., 426 F.3d. 549, 553 (2d Cir. 2005)).

"The movant bears the burden of 'demonstrat[ing] the absence of a genuine issue of material fact.'" Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The burden of persuasion may be satisfied by either: "(1) [ ] submitting evidence that negates an essential element of the non-moving party's claim; or (2) by demonstrating that the

non-moving party's evidence is insufficient to establish an essential element of the non-moving party's claim." Id. (further citation omitted). Once the moving party has met its burden, the nonmovant must "do more than simply show that there is some metaphysical doubt as to the material facts" and instead must offer "some hard evidence showing that its version of the events is not wholly fanciful[.]" Stein v. County of Nassau, 417 F. Supp. 3d 191, 197 (E.D.N.Y. 2019) (citations omitted).

"Summary judgment is inappropriate when the admissible materials in the record make it arguable that the claim has merit." Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) (internal quotation marks and citations omitted). In reviewing the record on summary judgment, a court may not take the place of a jury and "make credibility determinations or weigh the evidence." Id. (quoting Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. 133, 150 (2000)). Accordingly, where an issue regarding a material fact cannot be resolved without weighing the credibility of a witness, summary judgment is improper. See Kaytor, 609 F.3d at 546.

## II. Analysis

### A. Claims Uncontested by Plaintiff in Opposition to the Motion

If a nonmovant submits an opposition "'arguing that summary judgment should be denied as to some claims while not

mentioning others,' that response 'may be deemed an abandonment of the unmentioned claims.'" Camarda v. Selover, 673 F. App'x 26, 30 (2d Cir. 2016) (quoting Jackson v. Fed. Express, 766 F.3d 189, 195 (2d Cir. 2014)); see also Whitt v. Kaleida Health, 298 F. Supp. 3d 558, 567-68 (W.D.N.Y. 2018). Thus, by failing to address an argument in her opposition papers, a plaintiff abandons it. See Neurological Surgery, P.C. v. Travelers Co., 243 F. Supp. 3d 318, 329 (E.D.N.Y 2017); see, e.g., Senno v. Elmsford Union Free Sch. Dist., 812 F. Supp. 2d 454, 468 (S.D.N.Y. 2011) ("Plaintiff did not address this argument in his opposition papers, which operates as an abandonment of the argument."); Patacca v. CSC Holdings, LLC, No. 16-CV-0679, 2019 WL 1676001, at *13 (E.D.N.Y. Apr. 17, 2019) (deeming claims waived that were not fully addressed in opposition papers); Johannes Baumgartner Wirtschafts-Und Vermogensberatung GmbH v. Salzman, 969 F. Supp. 2d 278, 290 (E.D.N.Y. 2013) ("a [c]ourt need not entertain an argument that was not briefed").

Plaintiff has not responded meaningfully to any of Defendants' arguments challenging the substantive due process, procedural due process, equal protection, unlawful takings, conspiracy, or negligence claims set forth in the Amended Complaint (hereafter, "Unopposed Claims"). See Alexander v. Cent. Islip Sch. Dist., No 18-CV-2521, 2021 WL 4340730, at *11 (E.D.N.Y. Sept. 22, 2021) (ruling if a plaintiff does not respond "in any

meaningful manner to [d]efendant's arguments challenging her [] claims," or merely makes "[a] passing reference to her [] claims," this will "result in a waiver of those claims"). The Opposition makes only passing reference to the Unopposed Claims, asserting simply that "none of Plaintiff's claims should be dismissed at the summary judgment stage" because "material issues of fact" regarding each claim exist. (Opp'n at 10-11.) Plaintiff neglects to further support this assertion or rebut Defendants' arguments supporting summary judgment on the Unopposed Claims. (See id.)

Accordingly, the Unopposed Claims are deemed waived. See Camarda, 673 F. App'x at 30 ("Even where abandonment by a counseled party is not explicit, a court may infer abandonment from the papers and circumstances viewed as a whole." (cleaned up)); Petrisch v. HSBC Bank USA, Inc., No. 07-CV-3303, 2013 WL 1316712, at *17 (E.D.N.Y. Mar. 28, 2013) (collecting cases holding that where a party fails to address arguments in opposition papers on summary judgment motion, the claim is deemed abandoned). Hence, as to said Unopposed Claims, summary judgment shall enter in favor of Defendants.

B. Remaining Contested Claims

What remains are Plaintiff's claims of false arrest, false imprisonment, and malicious prosecution (hereafter, "Contested Claims"). For the reasons explained herein, these Contested Claims cannot withstand summary judgment.

1. False Arrest and False Imprisonment

To evaluate a false arrest claim arising under Section 1983, courts "look to the law of the state in which the arrest occurred." Guan v. City of N.Y., 37 F.4th 797, 804 (2d Cir. 2022); Coggins v. County of Nassau, 254 F. Supp. 3d 500, 514 (E.D.N.Y. 2017) (common law tort of false arrest is "synonymous" with false imprisonment, and thus, courts use false arrest "to analyze an alleged Fourth Amendment violation in the Section 1983 context" (quoting Posr v. Doherty, 944 F.2d 91, 96 (2d Cir. 1991))).[5] Accordingly, the Court considers Plaintiff's "false arrest, false imprisonment, [and] malicious prosecution . . . claims under Section 1983 collectively with their parallel claims under state law." Coggins, 254 F. Supp. 3d at 514.

To prevail on a false arrest claim, a plaintiff must show: "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." Guan, 37 F.4th at 804 (internal quotation marks omitted). "[P]robable cause is a complete defense to a false arrest claim." Id. An officer has probable cause to arrest when

[5] A claim for false arrest under federal law will preclude that same claim under state law unless the United States Constitution does not provide an "adequate alternative remedy." See Forrest v. County of Greene, 676 F. Supp. 3d 69, 79 (N.D.N.Y. 2023), reconsideration denied, 2023 WL 5097970 (N.D.N.Y. Aug. 9, 2023).

he knows, or reasonably believes, facts and circumstances that sufficiently and reasonably warrant the belief an arrestee has committed or is committing a crime. See Kee v. City of N.Y., 12 F.4th 150, 158 (2d Cir. 2021). To determine whether probable cause exists, a court must consider the facts "available to the officer at the time of the arrest and immediately before it." Id. (internal quotation marks omitted).

a. Probable Cause to Arrest Plaintiff for Petit Larceny

"A person is guilty of petit larceny when he steals property." N.Y. PENAL LAW § 155.25. Pursuant to New York law, larceny is defined as intentionally depriving another of or appropriating property by wrongfully taking, obtaining, or withholding such property from its owner. See id. § 155.05(1). To "deprive" someone of property is to "(a) withhold it or cause it to be withheld from [its owner] permanently" or for an extended period, such that the property's economic value or benefit is mostly lost to its owner, or "(b) to dispose of the property" such that its owner is unlikely to recover it. Id. § 155.00(3).

As a threshold matter, the Court does not, and cannot, credit Plaintiff's allegations that are newly raised in opposition to summary judgment. See Lyman v. CSX Transp., Inc., 364 F. App'x 699, 701 (2d Cir. 2010) (claims raised by a plaintiff "for the first time in opposition to summary judgment" need not be

considered); Kloner v. United States, No. 13-CV-3171, 2016 WL 5921071, at *4 (E.D.N.Y. Oct. 11, 2016) ("[I]t is not an abuse of discretion for a district court [] to disregard new claims brought for the first time in an opposition brief."). In her Opposition, Plaintiff newly alleges the officers falsely informed Taliefero that Plaintiff denied Taliefero access to the Property, and Plaintiff was withholding additional belongings of Taliefero's at an undisclosed storage facility. (See generally Pl.'s 56.1 Resp.; Pl.'s Decl., ECF No. 78-17, attached to Opp'n.) According to Plaintiff, the officers falsely and improperly induced Taliefero to press charges against Plaintiff for petit larceny, resulting in her arrest. (See id.) However, these claims are unsupported by any verifiable evidence in the record. At no point during her deposition did Plaintiff state or suggest officers lied to Taliefero or fabricated any information inducing Taliefero to press charges against Plaintiff. (See generally Pl.'s Tr.)

Thus, any allegations raised for the first time in Plaintiff's self-serving declaration opposing summary judgment or improperly raised in her Rule 56.1 Counterstatement are disregarded for purposes of resolving this Motion. See, e.g., Hayes v. N.Y.C. Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996) ("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous

deposition testimony"); Cestaro v. Prohaska, 681 F. Supp. 3d 121, 125 (S.D.N.Y. 2023) ("A conclusory contradiction of undisputed evidence in a self-serving affidavit, unsupported by other evidence, is not by itself sufficient to create a genuine dispute of material fact."); Deebs v. Alstom Transp., Inc., 346 F. App'x 654, 656 (2d Cir. 2009) ("The only 'evidence' cited in plaintiffs' brief is their own self-serving testimony, and the plaintiffs have made no attempt to square their own speculative, and subjective, testimony with the hard evidence adduced during discovery . . . . This is insufficient to defeat summary judgment." (cleaned up)); Emanuel v. Griffin, No. 13-CV-1806, 2015 WL 1379007, at *2 (S.D.N.Y. Mar. 25, 2015) ("[I]n deciding Defendants' motions for summary judgment, the Court will ignore all portions of Plaintiffs' Rule 56.1 Statement that contain 'improper legal argument and unsupported assertions.'" (citation omitted)); Watt v. N.Y. Botanical Garden, No. 98-CV-1095, 2000 WL 193626, at *1 n.1 (S.D.N.Y. Feb.16, 2000) ("[W]here the cited materials do not support the factual assertions in the [parties' 56.1] [s]tatements, the Court is free to disregard the assertion.").

Putting aside Plaintiff's unsupported claims against Defendants, a dispute of material fact remains as to whether Defendants lacked probable cause to arrest Plaintiff for petit larceny. The record is unclear as to whether Plaintiff

intentionally deprived Taliefero of, or appropriated, her property, in violation of New York Penal Law. In sum, the Parties continue to dispute whether: Plaintiff willingly allowed Taliefero to access the backyard and garage to inspect her belongings; Taliefero could actually access all her belongings in the backyard and garage with the assistance of officers, despite Plaintiff's alleged verbal objections; Plaintiff withheld some of Taliefero's belongings, either at an undisclosed storage facility or elsewhere on the Property; and, Plaintiff insisted Taliefero was not otherwise permitted or able to retrieve all her belongings from the Property. (See supra "Background", Part I.) Moreover, it is unclear from the record how, if at all, Plaintiff's alleged withholding of Taliefero's belongings amounted to permanent or detrimental deprivation of property sufficient to constitute petit larceny – particularly because Taliefero was able to retrieve the rest of her belongings only hours after Plaintiff's arrest. (See id.) These are material disputed facts relevant to whether Defendants lacked probable cause to arrest Plaintiff for petit larceny. However, as will be discussed, infra, that does not end the Court's inquiry.

b. Probable Cause to Arrest Plaintiff for Willful Eviction

Of relevance in this instance, Defendants arrested Plaintiff for petit larceny and a willful eviction violation.

Importantly, when evaluating whether probable cause exists, a court must focus on the validity of the arrest, not the validity of each charge. See Kee, 12 F.4th at 158. "[A] police officer is not liable for false arrest under Section 1983 if probable cause to arrest the plaintiff existed for any crime[.]" Id. at 158-59 (emphasis in original) (internal quotation marks omitted); see also Carruthers v. Colton, 153 F.4th 169, 180 (2d Cir. 2025).

A lessor engages in willful eviction when she willfully or intentionally "fails to furnish [] water, heat, light, power . . . or other service or facility . . . necessary to the proper or customary use of such building" or interferes with the occupant's "quiet enjoyment of the leased premises." N.Y. REAL PROP. LAW § 235(1). A lessor may be arrested for willful eviction if such violation occurs in the presence of police. See N.Y. CRIM. PROC. LAW § 140.10.

Plaintiff's Opposition noticeably omits any substantive argument against summary judgment on Plaintiff's arrest for the willful eviction violation; as such, Plaintiff is deemed to have waived this claim. (See Opp'n, in toto); see also Patacca, 2019 WL 1676001, at *13. In turn, this alone is sufficient to grant summary judgment in Defendants' favor on Plaintiff's false arrest and false imprisonment claims. As explained above, by failing to address Defendants' argument that Plaintiff's arrest was valid for some charge (not simply the petit larceny charge), Plaintiff has

abandoned her opposition against such argument. (See supra "Discussion", Part II(A).) In any event, Defendants are also entitled to summary judgment on these claims because no genuine dispute of material fact remains as to whether Defendants had probable cause to arrest Plaintiff for willful eviction.

It is undisputed that when Officer Garafano first reported to the Property on January 1, 2018, and spoke with Taliefero, she informed him: (1) she moved out of her apartment on the Property because Plaintiff turned off the heat and electricity, and (2) she needed police assistance with retrieving her belongings. (See supra "Background", Part I.) When Sergeant Dluginski later reported to the Property, Taliefero also informed him she vacated the Property and was temporarily living elsewhere because the basement had no heat or electricity. (See id.) Taliefero also prepared and signed the DIR swearing to the foregoing and emphasizing Plaintiff continued to prevent Taliefero from entering the basement and accessing her belongings. (See DIR at 2.) Plaintiff does not deny that throughout this incident on January 1, 2018, neither Taliefero nor the officers were given access to the Property's basement. At the scene, Plaintiff also did not deny shutting off Taliefero's heat or electricity. (See supra "Background", Part I.)

Without Plaintiff stating otherwise to Defendant Officers prior to her arrest, the only information available to

the officers was based on their observations at the Property and Taliefero's statements. "A reasonable officer would have believed this information--given the absence of any indicia that [Taliefero] was unreliable--and infer that [Plaintiff] committed the offenses reported." Jouthe v. City of N.Y., No. 05-CV-1374, 2009 WL 701110, at *10 (E.D.N.Y. Mar. 10, 2009). "A complainant's statement alone is sufficient to establish probable cause" for arrest. Sheikh v. Port Auth. of N.Y. & N.J., No. 24-CV-6309, 2026 WL 2593308, at *4 (E.D.N.Y. Sept. 2, 2026) (finding probable cause for plaintiff's arrest based "solely" on complainant's statements, despite complainant allegedly contradicting herself and an unsigned Domestic Incident Report); cf. also Betts v. Shearman, 751 F.3d 78, 83 (2d Cir. 2014) (holding wife's report of assault provided sufficient probable cause to arrest her husband, despite her visible intoxication and history of false accusations against him).

Even if Plaintiff told the officers at the scene that Taliefero's lease ended by mutual agreement of the cousins, the officers were under no obligation to assess the credibility of Plaintiff's defense. See, e.g., Jocks v. Tavernier, 316 F.3d 128, 135—36 (2d Cir. 2003) ("We did not impose a duty on the arresting officer to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest."); Valez v. City of N.Y.,

No. 08-CV-3875, 2010 WL 1460703, at *4 (S.D.N.Y. Apr. 12, 2010) ("[A]n arrestee's claim of innocence at the time of his arrest does not vitiate probable cause, nor does the 'officer's failure to investigate' that claim."); Curley v. Vill. of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (holding that even when presented with different stories from an alleged complainant and the arrestee, officers may choose to believe complainant's account if it is reasonable to do so); Weiner v. McKeefery, 90 F. Supp. 3d 17, 32 (E.D.N.Y. 2015) ("[A] police officer . . . is not required to explore and eliminate every theoretical plausible claim of innocence before making an arrest . . . [nor does he] have to prove the plaintiff's version wrong before arresting him.").

Whether Plaintiff did, in fact, shut off Taliefero's utilities or denied Taliefero access to her remaining belongings on the Property is also inapposite. Nor did the arresting officers need specific evidence of Plaintiff's intent during the incident to establish probable cause. See Soomro v. City of N.Y., 174 F. Supp. 3d 806, 812 (S.D.N.Y. 2016) ("[C]ourts have recognized that probable cause can exist 'even without specific evidence of knowledge and intent that will have to be proved to secure a conviction at trial.'"). Thus, the totality of the circumstances, i.e., the cousins' conduct at the scene; Plaintiff packing Taliefero's belongings and removing them from Taliefero's basement apartment; Plaintiff's refusal to permit Taliefero to

reenter the basement; and, Taliefero's statements that Plaintiff prohibited Taliefero from retrieving her belongings (even if false or inaccurate), established probable cause to arrest Plaintiff for a willful eviction violation. See Krause v. Bennett, 887 F.2d 362, 372 (2d Cir.1989) (instructing an officer's function is to "apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence"); Sheik, 2026 WL 2593308, at *5 ("probable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information" (internal quotation marks and citation omitted)).

c. Qualified Immunity

Even if Plaintiff had not abandoned her argument against summary judgment on the validity of her arrest for willful eviction, or if Defendants lacked probable cause for her arrest, summary judgment would still be proper here because Defendants are entitled to qualified immunity.

Qualified immunity shields state actors "performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Where applicable, qualified immunity offers "ample protection to all but the plainly incompetent or those who knowingly violate the

law." Sacaza v. City of N.Y., 169 F.4th 363, 369 (2d Cir. 2026) (quoting Dufort v. City of N.Y., 874 F.3d 338, 354 (2d Cir. 2017)).

"Even where actual probable cause does not exist, an officer may be entitled to qualified immunity on a § 1983 false arrest claim if his actions were objectively reasonable or if 'arguable probable cause' existed at the time of the arrest." Triolo v. Nassau County, 24 F.4th 98, 107 (2d Cir. 2022) (quoting Figueroa v. Mazza, 825 F.3d 89, 100 (2d Cir. 2016)); see also Zorn v. Linton, 607 U.S. 568, 572 (2026) (holding those acting under color of state law will receive qualified immunity "unless they could have 'read' the relevant precedent beforehand and 'know[n]' that it proscribed their specific conduct"); Cerrone v. Brown, 246 F.3d 194, 202 (2d Cir. 2001) (finding a court is permitted to grant summary judgment "if a reasonable officer could have believed his or her actions were lawful"). However, "summary judgment on qualified immunity grounds is not appropriate when there are facts in dispute that are material to a determination of reasonableness." Bacote v. Riverbay Corp., No. 16-CV-1599, 2017 WL 11567934, at *11 (S.D.N.Y. Nov. 8, 2017) (internal quotation marks and citation omitted).

A police officer has arguable probable cause if: "(a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Triolo,

24 F.4th at 107 (internal quotation marks omitted). "The question is not whether the officer should have acted as he did" but "whether any reasonable officer could have determined probable cause existed." Id. at 107-08 (emphasis in original) (cleaned up). Even if an officer is ultimately mistaken, if the officer's belief was reasonable and made in good faith based on the officer's own observations, qualified immunity would still attach. See Alla v. Verkay, 979 F. Supp. 2d 349, 367 (E.D.N.Y. 2013).

For the reasons set forth at length above (see supra "Discussion", Part II(B)(1)(ii)), Defendants established probable cause to arrest Plaintiff for a willful eviction violation. Thus, Defendants did not clearly violate Plaintiff's constitutional rights, and it was "objectively reasonable" for the arresting officers to believe probable cause existed for Plaintiff's arrest. See Sheikh v. Port Auth. of N.Y. & N.J., No. 24-CV-6309, 2026 WL 2593308, at *6 (E.D.N.Y. Sept. 2, 2026).

Accordingly, the Court GRANTS summary judgment to Defendants on Plaintiff's false arrest and false imprisonment claims.

2. Malicious Prosecution

> To prevail on a malicious prosecution claim under New York law and federal law, a plaintiff must show: (1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for

> the criminal proceeding and (4) actual malice.

Kee, 12 F.4th at 161-62 (internal quotation marks and citation omitted). A plaintiff must also demonstrate a "sufficient post-arraignment liberty restraint." Id. (internal quotation marks omitted) (quoting Rohman v. N.Y.C. Trans. Auth., 215 F.3d 208, 215 (2d Cir. 2000)).

The charges against Plaintiff were ultimately dismissed, and the parties do not dispute the proceedings terminated in Plaintiff's favor. (See supra "Background", Part I(F).) As explained above, a genuine dispute of material fact remains regarding probable cause for the petit larceny charge against Plaintiff. (See supra "Discussion", Part II(B)(1)(i)); see also Kee, 12 F.4th at 166 (observing that, unlike probable cause to arrest, probable cause to prosecute must be shown for each crime in the underlying criminal action). Plaintiff has also established a post-arraignment liberty restraint because she was required to return to court several times after her arrest before the charges were ultimately dismissed. See Rohman, 215 F.3d at 216 (holding plaintiff demonstrated a post-arraignment liberty restraint because, in New York, a criminal defendant released on her own recognizance "must 'render [her]self at all times amenable to the orders and processes of the court,' . . . [and] ordinarily remain in the state"; therefore, "these alleged limitations on [her]

liberty . . . implicate the Fourth Amendment" (citation omitted)). Thus, remaining at issue are the "initiation" and "malice" elements of Plaintiff's malicious prosecution claim.

To establish the initiation element of a malicious prosecution claim, a plaintiff must show the defendant "play[ed] an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." Bailey v. City of N.Y., 79 F. Supp. 3d 424, 448—49 (E.D.N.Y. 2015) (internal quotation marks omitted) (quoting Manganiello v. City of N.Y., 612 F.3d 149, 163 (2d Cir. 2010)). Once a criminal defendant is formally charged, "the chain of causation between the officer's conduct and the claim of malicious prosecution is broken by the intervening actions of the prosecutor, thereby abolishing the officer's responsibility for the prosecution." Jouthe, 2009 WL 701110, at *11. Thus, a malicious prosecution claim against a police officer "requires some showing that the [officer] 'distorted the process by which [plaintiff] was brought to trial, and an officer who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding.'" Breeden v. City of N.Y., No. 09-CV-4995, 2014 WL 173249, at *10 (E.D.N.Y. Jan. 13, 2014)). This can include a "[s]howing that the police 'failed to make a complete and full statement of facts to the District Attorney, misrepresented or falsified evidence, withheld evidence or

otherwise acted in bad faith.'" Bailey, 79 F. Supp. 3d at 449 (quoting Manganiello, 612 F.3d at 160).

Plaintiff has not cited any evidence in the record to demonstrate Defendant Officers "did anything other than disclose the information within [their] knowledge – that is, what [they] learned from speaking with" Taliefero and Plaintiff prior to and during Plaintiff's arrest. Jouthe, 2009 WL 701110, at *12. Again, Plaintiff also fails to provide any admissible evidence supporting her conclusory allegations that Defendant Officers provided false or fabricated information to prosecutors. (See supra "Discussion", Part II(B)(1)(i)); see also Jouthe, 2009 WL 701110, at *12 (citing Townes v. City of N.Y., 176 F.3d 138, 147 (2d Cir. 1999) (holding the chain of causation between the officer's conduct and the malicious prosecution claim is broken absent evidence "the police officer misled or pressured the [prosecutor] who could be expected to exercise independent judgment")).

It is undisputed none of the Defendant Officers substantively discussed Plaintiff's arrest with prosecutors. (See supra "Background", Part I(F).) Thus, the officers could not reasonably be deemed to have interfered with the prosecutors' exercise of independent judgment in pursuing Plaintiff's conviction. That Defendant Officers "provided the prosecutor with the version of the incident told to [them] by the alleged victim[]

does not demonstrate [the] [officers] misled or otherwise pressured the prosecutor." Jouthe, 2009 WL 701110, at *12.

Plaintiff argues the initiation element is satisfied because Defendant Officers gave prosecutors sworn statements and paperwork containing the officers' false and fabricated allegations that Plaintiff, inter alia, refused to allow Taliefero access to her belongings, which induced Taliefero to seek Plaintiff's arrest. (See supra "Background", Part I.) Again, these conclusory allegations, raised for the first time in Plaintiff's Opposition and unsupported by record evidence, cannot defeat a motion for summary judgment. (See supra "Discussion", Part II(B)(1)(i).) In the absence of such admissible evidence from Plaintiff, the Defendant Officers merely relaying Taliefero's sworn statements and the officers' own personal observations about Plaintiff's arrest to prosecutors does not prove the officers did more than simply disclose the information at their disposal. See Manganiello, 612 F.3d at 163 ("To initiate a prosecution, a defendant must do more than report the crime or give testimony."). Thus, the Court "is not entirely persuaded that Plaintiff[] [has] satisfied the initiation element of the malicious prosecution claim simply because Officer [Garafano] swore to and signed [a] [] complaint against [Plaintiff], especially in the absence of evidence . . . [officers] misled the prosecutor." Jouthe, 2009 WL 701110, at *12. Plaintiff's failure to satisfy the initiation

element is fatal to her malicious prosecution claims.[6] Accordingly, summary judgment in Defendants' favor on Plaintiff's malicious prosecution claims is GRANTED.

CONCLUSION

Accordingly, for the stated reasons, **IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 78) is **GRANTED** in its entirety.

Judgment shall enter in favor of Defendants; thereafter, the Clerk of Court is directed to **CLOSE** this case.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: September 30, 2026
Central Islip, New York

[6] For this reason, the Court need not evaluate whether Plaintiff successfully established the "malice" element of her malicious prosecution claims. That said, conclusory and generalized allegations of malice "do not contain the specificity required to state a claim for malicious prosecution." Longo v. Ortiz, No. 15-CV-7716, 2016 WL 5376212, at *4 (S.D.N.Y. Sept. 26, 2016).